IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PATRICK RAFFERTY,<br><br>    Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social Security,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION DENYING DISABILITY BENEFITS TO PLAINTIFF<br><br>Court No. 2:15-cv-00768-EJF<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff, Patrick Rafferty, pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Acting Commissioner of Social Security (Commissioner) denying his claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act). After careful review of the entire record, the parties' briefs, and arguments presented at a hearing held on February 17, 2017, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and free of harmful legal error and is, therefore, AFFIRMED.

This Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)).  The Court may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]."  *Id.*

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill will be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

(quoting *Hackett*, 395 F.3d at 1172).  Where the evidence as a whole can support either the agency's decision or an award of benefits, the Court will affirm the agency's decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

In this case, Mr. Rafferty claimed disability at the age of 27, based on degenerative disc disease, hearing loss, arthritis in his fingers, and joint pain.  (The certified copy of the transcript of the entire record of the administrative proceedings relating to Mr. Rafferty (hereinafter, "Tr.") 109, 133, ECF No. 7.)  He obtained a GED and had past relevant work as a tractor/trailer driver, construction worker, and maintenance mechanic.  (*Id.* at 134.)  The ALJ followed the five-step sequential evaluation process for evaluating disability claims.  (*Id.* at 11-23); *see generally* 20 C.F.R. § 404.1520(a)(4).  As relevant here, the ALJ found that Mr. Rafferty retained the residual functional capacity (RFC) to perform a limited range of light work.  (Tr. 15.)  Considering this RFC, the ALJ found – consistent with the vocational expert's testimony – that Mr. Rafferty could not perform his past relevant work but could perform other jobs existing in significant numbers in the national economy.  (*Id.* at 21-22.)  The ALJ thus concluded that Mr. Rafferty had failed to establish disability under the Act.  (*Id.* at 22.)  The Court finds that substantial evidence in the record supports the ALJ's factual findings and that the ALJ applied the correct legal standards.

I.  **The ALJ Committed Harmless Error in Failing to Analyze Whether Mr. Rafferty Met or Medically Equaled Listing 1.04A.**

Mr. Rafferty first asserts that the ALJ erred in finding that he did not meet or equal Listing 1.04A (disorders of the spine).  (Pet'r Opening Br. (Pl. Br.) 12-17, ECF No. 17.)  As a preliminary matter, the Court notes that Mr. Rafferty had the burden at step three to provide medical evidence demonstrating that his impairments met or medically equaled a Listing.  *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733

(10th Cir. 2005). Meeting or equaling the requirements of a Listing at step three of the sequential evaluation process is "a very high standard." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). "To show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment." *Lax*, 489 F.3d at 1085 (citing 20 C.F.R. §§ 404.1525, 416.925).

To meet Listing 1.04A, a claimant must have a disorder of the spine (*e.g.*, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture) resulting in compromise of a nerve root or the spinal cord. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. In addition, Listing 1.04A requires all of the following:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

*Id.* To show equivalency, the claimant must present medical findings "equal in severity to *all* the criteria for the most similar listed impairment." *Zebley,* 493 U.S. at 531.

The Court finds the ALJ erred in failing to analyze Listing 1.04 and a potential equivalency finding. Sufficient evidence existed in the record that Mr. Rafferty brought to the ALJ's attention, that the ALJ should have explicitly analyzed Listing 1.04 and the potential for an equivalency finding based on Mr. Rafferty's condition in combination with his obesity.

However, because the ALJ elsewhere discussed evidence supporting a finding that Mr. Rafferty did not meet or equal this Listing, the Court concludes that any error was harmless. *See Fischer-Ross*, 431 F.3d 733 ("an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment."). Specifically, as seen below, the ALJ's determination of Mr. Rafferty's capabilities and his crediting of medical testimony makes clear that the ALJ would not have found Mr. Rafferty's condition meets or equals Listing 1.04.

## II. The ALJ's Assessment of Mr. Rafferty's RFC Complied with Social Security Ruling (SSR) 96-8p.

Next, Mr. Rafferty argues that the ALJ did not provide a "proper function-by-function assessment" of his RFC. (Pl. Br. 17-19, ECF No. 17.) Courts within the Tenth Circuit have consistently rejected Mr. Rafferty's argument that a hyper-technical function-by-function analysis is required when assessing a claimant's RFC. *See Hendron v. Colvin*, 767 F.3d 951, 956-57 (10th Cir. 2014); *Stone v. Colvin*, No. CIV-14-612-STE, 2015 WL 5231033, at *3 (W.D. Okla. Sept. 8, 2015) (unpublished). The court in *Hendron* noted that the function-by-function assessment ensures that an ALJ does not overlook limitations or restrictions that would narrow the ranges and types of work that a claimant can perform. *See Hendron*, 767 F.3d at 956 (citing SSR 96-8p, 1996 WL 374184, at *3). Here, the Court finds no evidence that the ALJ overlooked any limitations or restrictions in this case. The ALJ determined that Mr. Rafferty could perform light work with only occasional climbing of ramps and stairs, stooping, crouching, and crawling; never climbing ropes and scaffolds; frequently kneeling; and having no exposure to vibration and hazards such as heights and dangerous moving machinery. (Tr. 15.) The ALJ's decision demonstrated that he gave deference to the medical opinions that supported

his assessment of Mr. Rafferty's RFC. (*Id.* 15; *see also id.* at Tr. 61-63.) Thus, the ALJ's RFC assessment was based upon substantial evidence.

Further, Mr. Rafferty's argument that the ALJ was required to tie evidence to each specific finding in the RFC, (Pl. Br. 17-19, ECF No. 17), is unsupported. *See Banks v. Astrue*, 537 F. Supp. 2d 75, 85 (D.D.C. 2008). "Although the language of SSR 96-8p requires that the ALJ's RFC assessment '*must address* . . . the remaining exertional . . . capacities of the individual,' this does not require written articulation of all seven strength demands." *Id.* at 85 (emphasis in original) (quoting SSR 96-8- at *5); *see also Hendron*, 767 F.3d at 954-55 (affirming the ALJ's narrative discussion of the evidence, which supported the RFC assessment). The Court concludes that the ALJ's RFC assessment was in proper form and supported by substantial evidence.

### III. The ALJ Reasonably Discounted Mr. Rafferty's Subjective Complaints of Completely Disabling Limitations.

Next, Mr. Rafferty alleges that the ALJ's weighing of his subjective complaints was not supported by substantial evidence in the record. (Pl. Br. 19-23, ECF No. 17.) However, the Court concludes that the ALJ provided several valid and well-supported reasons for finding that Mr. Rafferty's complaints were not fully credible.

First, the ALJ noted that Mr. Rafferty testified that his pain medications were "helpful" in treating his symptoms. (Tr. 16; *see* Tr. 32); *see White v. Barnhart*, 287 F.3d 903, 909-10 (10th Cir. 2002) (claimant's admission that medication relieved some of her pain supported finding that her impairments were not disabling). The ALJ also noted that Mr. Rafferty testified that his pain medication made him drowsy, and yet Mr. Rafferty failed to corroborate this side effect by reporting it to his treatment providers. (Tr. 32; *see, e.g.*, Tr. 259, 280-84); *see* SSR 96-7p, 1996

5

WL 374186, at *5 (stating that one strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record).[2]

The ALJ next determined that the objective medical evidence did not support the degree of pain and functional limitations alleged by Mr. Rafferty. (Tr. 16.) For instance, the ALJ noted that there was scant medical evidence dated prior to Mr. Rafferty's November 2010 alleged disability onset date. (*Id.*) The ALJ further observed that, despite his allegedly disabling back pain, Mr. Rafferty was able to lift and move a carpet in September 2011. (*Id.* at 16-17; *see id.* at 208.) Although Mr. Rafferty injured his knee at that time, and required surgery, the record showed that Mr. Rafferty recovered well following surgery and did not continue to complain of disabling knee pain. (*Id.* at 17; *see id.* at 219-20.) Additionally, while Mr. Rafferty was diagnosed with degenerative disc disease, his doctors provided only conservative treatment, including physical therapy, which was effective in relieving many of Mr. Rafferty's symptoms. (*Id.* at 17; *see id.* at 290, 298.)[3] The ALJ observed that Mr. Rafferty's doctors did not recommend, and Mr. Rafferty did not pursue, any additional treatment for his back pain, such as surgery or epidural injections. (*Id.* at 17-18.) The Court finds that the ALJ reasonably relied on Mr. Rafferty's limited and conservative course of treatment in finding that his subjective

---

[2] SSR 96-7p was recently superseded by SSR 16-3p, which took effect on March 28, 2016. *See* 2016 WL 119029 & 1237954 (Mar. 16 & 24, 2016). Because SSR 16-3p was not in effect at the time of the ALJ's decision here, this Court will base its review on SSR 96-7p.

[3] The ALJ noted that, while physical therapy was helpful in alleviating Mr. Rafferty's symptoms, there was no evidence that Mr. Rafferty continued physical therapy as recommended by his doctors. (Tr. 17.) Mr. Rafferty points out that he was discharged to a home exercise program following his final physical therapy visit, and discontinued physical therapy due to "insurance issues." (Pl. Br. 21, ECF No. 17 (citing Tr. 299).) While the ALJ erred in providing this reason for discounting Mr. Rafferty's testimony, the ALJ's finding that Mr. Rafferty's symptoms were alleviated when he participated in physical therapy does not change. Further, as discussed, the ALJ provided several other valid reasons for discounting Mr. Rafferty's complaints. Thus, the Court finds any error harmless. *See Lax*, 489 F.3d at 1088 (ALJ's error in relying on an invalid reason was harmless where the ALJ identified other valid reasons for finding).

complaints were not fully believable. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (an ALJ must consider the effectiveness and type of treatment); *Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995); *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1989) (upholding an ALJ's credibility finding where, despite claimant's complaints of pain, treating physicians "were more enthusiastic about his recovery.").

Finally, the ALJ also relied on the results of Dr. Johnsen's evaluation, which indicated that Mr. Rafferty was not quite as limited as he alleged. (Tr. 18-19.) For instance, Dr. Johnsen found that Mr. Rafferty retained a symmetric steady gait; he had no palpable muscle spasms; his muscle bulk and tone were normal; his muscle strength was nearly normal; and his straight-leg raise test was a false positive bilaterally. (*Id.* at 18; *see id.* at 250-51.) Dr. Johnsen found that Mr. Rafferty displayed "5/5 Waddell signs," which indicated a "high correlation for psychosomatic disease and symptom over magnification." (*Id.* at 18; *see id.* at 251.) Dr. Johnsen concluded that Mr. Rafferty displayed "no objective evidence of major back problems" and that Mr. Rafferty had "no limitations." (*Id.* at 19; *see id.* at 251.) The Court concludes that the ALJ reasonably discounted Mr. Rafferty's testimony based in part on Dr. Johnsen's findings regarding Mr. Rafferty's abilities and the credibility of Mr. Rafferty's complaints. *See* 20 C.F.R. § 404.1529(c)(4) (an ALJ must consider inconsistencies in the evidence); *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990) (upholding an ALJ's credibility finding where, among other factors, an examining doctor suspected the claimant of malingering); *Gossett*, 862 F.2d at 807 (noting, in upholding ALJ's credibility finding, that the claimant's subjective pain testimony was not fully substantiated by the opinion of his treating physician).

Therefore, because the ALJ's findings regarding Mr. Rafferty's credibility were supported by substantial evidence, the Court affirms the decision. *See Lax*, 489 F.3d at 1084

(quoting *Zoltankski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (citation and quotation omitted)).

**IV.     The ALJ Reasonably Evaluated the Medical Source Opinions.**

Finally, Mr. Rafferty contends that the ALJ improperly discounted Dr. Callahan's opinion and improperly relied on the opinions of the state agency physicians. (Pl. Br. 23-26, ECF No. 17.) However, because the ALJ reasonably weighed all of the medical source opinions, the Court concludes that his evaluation of these opinions does not support Mr. Rafferty's request for remand. *See* 20 C.F.R. § 404.1527(c).

In April 2014, Mr. Rafferty saw Dr. Callahan for "medication and disability paperwork." (Tr. 279.) Despite Mr. Rafferty's generally unremarkable physical examination, (*Id.* at 280), Dr. Callahan completed a physical residual function capacity statement at Mr. Rafferty's request. (*Id.* at 275-78.) In general, he opined that Mr. Rafferty could sit for 15 minutes, walk for 30 minutes, and sit for less than one hour in an eight-hour workday. (*Id.* at 276.) He also opined that Mr. Rafferty could lift and carry up to five pounds occasionally. (*Id.* at 277.) The Court finds that the ALJ reasonably assigned no weight to Dr. Callahan's opinion. (*Id.* at 18.)

The ALJ first contrasted Dr. Callahan's conservative course of treatment with the extreme limitations he assigned. (*Id.*) For instance, although Dr. Callahan opined that Mr. Rafferty could not even perform sedentary work on a regular basis due to his degenerative disc disease, Dr. Callahan did not recommend additional treatment, such as surgery or injections, for this condition. (*Id.*) The ALJ could reasonably conclude that Dr. Callahan's failure to recommend more aggressive treatment indicated that Mr. Rafferty was not quite as limited as Dr.

Callahan opined. *See* 20 C.F.R. § 404.1527(c)(4) (an ALJ must consider consistency). Next, the ALJ noted that Dr. Callahan performed a DOT physical of Mr. Rafferty, in order to renew his commercial driver's license, and yet there was no indication that Dr. Callahan did not approve the renewal. (Tr. 18; *see* Tr. 282-84.) The Court finds that the ALJ could reasonably conclude Mr. Rafferty's application for a commercial driver's license undermined Dr. Callahan's opinion that Mr. Rafferty would need to lie down and recline for about five hours in an eight-hour workday. (*Id.* at 276); *see White*, 287 F.3d at 906-08 (treating physician's lack of explanation for differences between two reports, with no apparent change in claimant's medical condition, was a reason to reject opinion). Finally, the ALJ also concluded that Dr. Callahan's opinion was inconsistent with the record as a whole, including the other medical opinions, which generally demonstrated that Mr. Rafferty retained a normal gait, normal muscle bulk and tone, and nearly normal strength (Tr. 18; *see* Tr. 208-09, 247, 248-51, 283, 286, 291-97). Therefore, the Court finds that the ALJ provided several valid and well-supported reasons for finding that Dr. Callahan's opinion was not entitled to weight.

Mr. Rafferty also takes issue with the ALJ's decision to give weight to the opinion of reviewing physician Dr. Brown, who opined that Mr. Rafferty could perform a reduced range of light work. (Pl. Br. 25, ECF No. 17; *see* Tr. 61-62). Mr. Rafferty complains that Dr. Brown completed his opinion in February 2013, and therefore did not review Dr. Callahan's medical records from April 2013 through February 2014. (Pl. Br. 25, ECF No. 17.) However, Mr. Rafferty's argument ignores the fact that Dr. Brown reviewed Mr. Rafferty's MRI findings and the results of Dr. Johnsen's examination, and that Dr. Callahan's subsequent treatment notes demonstrated that Mr. Rafferty retained a normal gait and normal range of motion in all major muscle groups. (Tr. 283, 286, 291-98.) Thus, because Dr. Brown's opinion was consistent with

the record as a whole, which showed that Mr. Rafferty's physical impairments were not so severe as to preclude all work activity, it provided substantial evidence in support of the ALJ's RFC assessment. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2008) (a non-examining physician is an acceptable medical source, whose opinion the ALJ is entitled to consider).

## CONCLUSION

Because substantial evidence supports the ALJ's decision, and the ALJ did not commit harmful legal error, this Court AFFIRMS the decision. The Court will enter judgment in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-304 (1993).

DATED this 27th day of March, 2017.

EVELYN J. FURSE
United States Magistrate Judge